# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James M. Kush,                              :
                    Petitioner              :
                                            :   No. 1688 C.D. 2017
          v.                                :
                                            :   Submitted:  February 16, 2018
Workers' Compensation Appeal                :
Board (Power Contracting Company),          :
                    Respondent              :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE McCULLOUGH                                        FILED:  May 17, 2018


          James M. Kush (Claimant) petitions for review of the October 26, 2017 order of the Workers' Compensation Appeal Board (Board) affirming the order of the Workers' Compensation Judge (WCJ), which dismissed Claimant's claim petition.


## Facts and Procedural History

          Claimant was employed by Power Contracting Company (Employer) as a union electrical worker.  (WCJ's Finding of Fact (F.F.) No. 9; Reproduced Record (R.R.) at 29a, 123a.)  On January 12, 2015, he was involved in a motor vehicle accident while driving to work.  (WCJ's F.F. No. 10; R.R. at 123a.)  Claimant sustained substantial injuries in the accident.

          On April 13, 2015, Claimant filed a claim petition for workers' compensation benefits based upon injuries that he suffered during the January 12

accident.[1]  (R.R. at 1a-7a.)  In his petition, Claimant asserted that, at the time of the injury, he was employed by Employer as a traveling employee, or, alternatively that he was on a special mission for Employer.  (R.R. at 2a.)  On April 29, 2015, Employer filed an answer to the claim petition, wherein it denied all allegations.  (R.R. at 11a-15a.)

The WCJ conducted hearings on May 5, 2015, and June 23, 2015. Claimant testified on his own behalf, explaining that he had been employed as a union electrical worker for both Vantage Corporation (Vantage) and Employer for the past three years.[2]  (R.R. at 30a.)  In that capacity, he served as an electrical foreman and managed numerous different jobs for each employer, often at the same time.  (R.R. at 32a.)  Claimant stated that he was paid separately by each employer.  (*Id.*)  Claimant's testimony outlined those jobs, and he referenced a detailed, day-by-day account of where and for which company he worked between the dates of September 29, 2014, and June 15, 2015, during his testimony at the June 23, 2015 hearing.  (R.R. at 85a.) Claimant testified that he often moved from one job to another, sometimes working at different job sites on the same day.  He also stated that it was common for him to switch

---

[1] On that same day, Claimant also filed a claim petition naming Vantage Corporation (Vantage) as his employer.  The claim petition related to alleged work-related injuries occurring on October 8, 2014, as well as alleged total disability resulting from the January 12, 2015 vehicle accident.  The two claim petitions were consolidated, but the litigation was bifurcated to determine whether Claimant's injuries resulting from the January 12 accident occurred in the course of employment. (Board's opinion at 1-2.)  We also note that Vantage paid Claimant's medical expenses for treatment of shoulder injuries from October 8, 2014 (the date of the alleged work injury), through January 12, 2015 (the date of the automobile accident).  *Id.* at 1.

[2] According to Claimant's testimony, Vantage and Employer shared contracts and conducted their operations from the same building, and their employees often shuttled between the two companies.  (R.R. at 30a-31a.)

between Vantage and Employer, explaining that "everybody just pretty much moved fluidly through from company to company." (R.R. at 34a.)

Claimant further testified that Vantage provided him with a company truck, and that he used that truck to travel to jobs for both Vantage and Employer. (WCJ's F.F. No. 12; R.R. at 39a-40a, 124a.) On a typical day, he did not visit the corporate headquarters of either company; rather, he drove directly from his home to his assigned job site. (R.R. at 34a-35a, 41a.) Vantage also provided him with a credit card to purchase gas for the truck. (R.R. at 43a.) He was required to maintain a detailed travel log, itemizing each cost with separate cost codes and job numbers for Vantage and Employer. (*Id.*) Based on this accounting, Vantage paid for the fuel used to travel to its jobs, and Employer paid for the fuel used to travel to its jobs. (*Id.*)

Claimant testified that, on the date of the accident, he was working at a job for Employer in Shaler Township along Route 8 (the Shaler Job Site). He testified that he left his home at about 4:30 a.m. on January 12, 2015. While traveling north on Route 403 to the job, he struck a patch of ice on the road and crashed into a guardrail. (R.R. at 50a-51a.)

Claimant testified that, on the date of the accident, he was managing four different jobs for Employer and five jobs for Vantage. (R.R. at 73a-74a.) However, he had worked almost exclusively for Employer from on or about December 22, 2014, to January 12, 2015. (WCJ's F.F. No. 10; R.R. at 76a-77a, 123a.) Further, he had been working almost exclusively at the Shaler Job Site on the seven days that he worked prior to January 12[3] and had been working almost exclusively at the Shaler Job Site

---

[3] Claimant worked for Employer at the Shaler Job Site on December 22, 24, 29, 30, and 31, 2014, and on January 5, 7, 14, 15, and 16, 2015. (R.R. at 77a.) After the vehicle accident, he did not report to work on January 12-13, 2015. (*Id.*)

3

since December 8, 2014. (WCJ's opinion, at 4; R.R. at 123a.) Claimant represented that he did not receive compensation for his travel time unless he needed to pick up a piece of equipment on his way to a job, (R.R. at 78a), or was traveling from the job of one employer to that of another. (R.R. at 96a.)

On October 6, 2016, the WCJ issued his decision and order dismissing Claimant's petition, finding that no exception to the "coming and going" rule applied and concluding that Claimant's injury occurred during his commute to a fixed job location. (R.R. at 120a, 125a-26a.)

On October 19, 2016, Claimant appealed the WCJ's order. (R.R. at 129a.) On October 26, 2017, the Board issued its decision and order affirming the decision of the WCJ. (R.R. at 136a.) Claimant timely filed a petition for review with this Court on November 14, 2017. (R.R. at 149a.)

## Discussion

On appeal to this Court,[4] Claimant argues that the Board erred in affirming the decision of the WCJ, which found that Claimant was not acting in the course of his employment when he was involved in the motor vehicle accident on January 12, 2015. Claimant asserts that the circumstances of his injuries fell under two exceptions to the "coming and going" rule. Specifically, he contends that he had no fixed place of

---

[4] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006). The scope of review on questions of law is plenary and the standard of review is *de novo*. *Pitt Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 912 A.2d 206, 207 (Pa. 2006).

4

employment and that his employment agreement with Employer included the time spent for transportation to and/or from work.

Section 301(c) of the Workers' Compensation Act (Act)[5] provides, in relevant part:

> The terms "injury" and "personal injury" shall be construed to mean an injury to an employe . . . arising in the course of his employment and related thereto. . . . The term "injury arising in the course of employment" as used in this article . . . shall include all . . . injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere . . . .

77 P.S. §411.

Whether an employee is acting within his course of employment at the time of the injury is a question of law to be determined by the Court based on the WCJ's findings of fact, and subject to *de novo* review. *Wachs v. Workers' Compensation Appeal Board (American Office Systems)*, 884 A.2d 858, 862 (Pa. 2005). "Generally, under the 'going and coming rule,' injuries sustained while an employee is traveling to and from his place of employment are considered outside the course and scope of employment and are, therefore, not compensable under the Act." *Holler v. Workers' Compensation Appeal Board (Tri Wire Engineering Solutions, Inc.)*, 104 A.3d 68, 71 (Pa. Cwmlth. 2014) (citing *Wachs*, 884 A.2d at 861-62). However, in *Peterson v. Workemen's Compensation Appeal Board (PRN Nursing Agency)*, 597 A.2d 1116, 1119-120 (Pa. 1991), our Supreme Court established four exceptions to this general rule: (1) the employment contract includes transportation to and/or from work; (2) the claimant has no fixed place of work; (3) the claimant is on a special assignment or

---

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411.

5

mission for the employer; or (4) special circumstances are such that the claimant was furthering the business of the employer.

We construe the course of employment more broadly for traveling employees, keeping in mind the fact that the Act is remedial in nature and intended to benefit the worker. *Holler*, 104 A.3d at 70. "Whether a claimant is a traveling employee is determined on a case by case basis, and [the Court] consider[s] whether the claimant's job duties involve travel, whether the claimant works on the employer's premises, or whether the claimant has no fixed place of work." *Id.* at 71 (internal quotation marks and citations omitted). The fact that an employer has a central headquarters from where the claimant sometimes works is not controlling. *Id.* (citing *Toal Associates v. Workers' Compensation Appeal Board (Sternick)*, 814 A.2d 837, 841 (Pa. Cmwlth. 2003)).

Our Supreme Court considered the "no fixed place of work" exception to the "coming and going" rule in *Peterson*. There, the claimant, a practical nurse employed by a nursing agency, was injured in an automobile accident while traveling to the workplace assigned by her employer. The evidence of record indicated that the claimant was not required to report to the employer's office to receive her assignments; rather, she received them about one week in advance when her employer would contact her at her home. The nursing agency neither provided her with transportation to get to and from job sites nor reimbursed her for travel expenses. Also, the claimant's gross wages did not include compensation for the time of her commute. On these facts, the Supreme Court held that "[a] temporary employee, who is employed by an agency, never has a fixed place of work. Consequently, when the agency employee [was] travel[ing] to an assigned workplace, the employee was furthering the business of the agency." *Peterson*, 597 A.2d at 1120.

6

This Court has also addressed the "no fixed place of work" exception to the "coming and going" rule. In *Foster v. Workers' Compensation Appeal Board (Ritter Brothers, Inc.)*, 639 A.2d 935 (Pa. Cmwlth. 1994), the claimant was a journeyman carpenter working for his employer at a mall job site. He suffered injuries in a motorcycle accident that occurred while he was exiting the mall parking lot. In that case, the claimant was not required to report to the employer's home office for assignment. Instead, he reported directly to his assigned job site for an indefinite period until the contract was completed. The employer did not pay for his travel time or travel expenses. Although the facts were similar to those of the *Peterson* case, we distinguished *Foster*, finding that *Peterson* merely carved out a specific and narrow exception for temporary employees of an employment agency. We ultimately found that the claimant had a fixed place of employment because he was to report to the same site each day until the contract was complete, and it was not envisioned that he would report to any other job site or work under the supervision of anyone but the employer during that period.

A similar issue arose again in *Mansfield Brothers Painting v. Workers' Compensation Appeal Board (German)*, 72 A.3d 842 (Pa. Cmwlth. 2013). There, the claimant was a union employee assigned to a specific job at the University of Pennsylvania until the job was complete. While walking to a train station after his workday, the claimant fell and was injured. We noted that "[t]here [was] no precedent that a union assignment for a single project makes an employee a travelling employee. The fact that a job has a discrete and limited duration does not make the employee who holds it a travelling employee" for purposes of the "no fixed place of work" exception. *Mansfield Brothers*, 72 A.3d at 848.

7

Our unreported decision in *LePore v. Workers' Compensation Appeal Board (Full Phaze Construction, Inc.)* (Pa. Cmwlth., No. 1494 C.D. 2015, filed May 11, 2016), is also relevant to the matter before us. In *LePore*, the claimant was a carpenter who worked for an employer at various job sites throughout the state. Rather than reporting to the employer's main office each day, he commuted from his home to his assigned job site. While commuting to work one day, he was involved in an automobile accident. Although the claimant was assigned to different job sites, he worked solely under the supervision of the employer's owner. Citing our prior decisions in *Foster* and *Mansfield Brothers*, we found that the Board did not err in finding that the claimant had a fixed place of work and was, therefore, ineligible for benefits under the "coming and going" rule.

In the instant matter, we find that the WCJ, and the Board in affirming the WCJ's decision, properly relied upon the *Foster*, *Mansfield Brothers,* and *LePore* cases. As explained in *Mansfield Brothers*, "[t]he fact that a job has a discrete and limited duration does not make the employee who holds it a travelling employee." *Mansfield Brothers,* 72 A.3d at 848. Claimant testified that he moved equipment to the Shaler Job Site when it began; that he anticipated working only at the Shaler Job Site on the day of the accident; and that he worked exclusively at the Shaler Job Site for several weeks prior to the accident. As noted by the Board in its opinion, the WCJ "treated Claimant's testimony as credible." (Board's opinion at 7.) Thus, we are constrained to conclude that Claimant's testimony constituted substantial evidence and supports the WCJ's determination that Claimant had a fixed job location for purposes of the "coming and going" rule.

We also conclude that the WCJ did not err in finding that travel was not included in Claimant's employment contract with Employer. We have explained:

> [T]o satisfy the employment contract exception to the coming and going rule, a claimant must satisfy two elements. First, the claimant must prove that a travel allowance is related to the actual expense and time involved in the claimant's commute. Second, the claimant must prove that the employer provided or controlled the means of the commute.

*Leisure Line v. Workers' Compensation Appeal Board (Walker)*, 986 A.2d 901, 907 (Pa. Cmwlth. 2007). Claimant did not satisfy either element.

With respect to the second element, Claimant testified that Vantage, rather than Employer, owned and provided the truck used for his commute to and from work. Even though one of his employers provided for Claimant's means of transportation to and from work, the relevant consideration in this matter is whether *Power Contracting Company*—the employer named in the claim petition—provided or controlled the means of his commute. Because there is no evidence of this on the record, we cannot conclude that the Employer had any control over the means of Claimant's commute to work.

With respect to the first element of the *Leisure Line* test, Claimant testified that he used a Vantage-provided credit card to pay for gas and that Vantage and Employer would each pay for the gas used to commute to their respective job sites. However, Claimant's testimony clearly explained that his wages did not include pay for travel. He testified that he only received pay for time spent traveling to pick up equipment if the pick-up occurred on his way to a job. (R.R. at 78a.) He further testified that, if he needed to leave a job site to pick up equipment, he did not receive pay for his time away from the job site. To emphasize his point, he provided the following example:

> We leave the site to go pick up the dump truck from Turtle Creek to Pittsburgh and get the truck back, you know, to

9

Turtle Creek [so] we have that piece of equipment for Monday morning. The company docked us three hours, and this is throughout the course of the normal day of business. So if they're going to dock us throughout the normal day or [sic] business, they certainly weren't paying us at five o'clock in the morning to go pick up a truck.

(R.R. at 88a.) Finally, he represented that he did receive pay when traveling from a Vantage job to an Employer job, or vice versa, during the course of a workday; however, he was not paid for his time spent driving home at the end of the day. (R.R. at 96a.)

Based on this testimony, which the WCJ treated as credible, we find that substantial evidence exists to support the WCJ's finding that Claimant's employment contract with Employer did not include provisions for travel. Because the record contains no evidence that Employer provided or controlled the means of Claimant's commute, and because Claimant failed to establish that Employer compensated him for his travel time, the employment contract exception to the "coming and going" rule is not applicable here.[6]

---

[6] We note that, without evidence of Claimant's employment agreement with Employer and/or any express agreement between Vantage and Employer, we cannot conclude that the working relationship between the two employers gave Employer any control over Claimant's means of transportation.

10

**Conclusion**

Based upon the foregoing, the evidence of record contains substantial evidence to support the WCJ's findings that Claimant had a fixed place of work at the time of the automobile accident and that his employment agreement with Employer did not contain provisions for travel. Therefore, we conclude that the Board did not err in affirming the decision and order of the WCJ, which dismissed Claimant's claim petition against Employer.

Accordingly, we affirm the order of the Board.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James M. Kush,                                    :
                 Petitioner                   :
                                    :   No. 1688 C.D. 2017
                v.                                :
                                      :
Workers' Compensation  Appeal            :
Board (Power Contracting Company),       :
                 Respondent                  :

## *ORDER*

       AND NOW, this 17th day of May, 2018, the October 26, 2017 order of the Workers' Compensation Appeal Board is hereby affirmed.

                                     _____
                                     PATRICIA A. McCULLOUGH, Judge